UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X
                                 :

KAJA SOKOLA,                           :

                                 :

                Plaintiff,         :         20-cv-0925 (LJL)

           -v-                 :

                                 :        <u>OPINION & ORDER</u>

HARVEY WEINSTEIN, ROBERT WEINSTEIN, THE  :
WALT DISNEY COMPANY, DISNEY ENTERPRISES, :
INC., MIRAMAX HOLDING CORP., MIRAMAX  :
FILM NY LLC f/k/a MIRAMAX FILM CORP., and :
DOE CORP. 1-10,                    :

                                 :

                Defendants.     :

                                 :

----------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__7/2/2020__

LEWIS J. LIMAN, United States District Judge:

      Plaintiff Kaja Sokola ("Sokola" or "Plaintiff") filed this action in New York State

Supreme Court, alleging that Harvey Weinstein sexually assaulted her in 2002 when she was a

16-year-old fashion model visiting New York, and he continued to harass her thereafter ("State

Court Action"). Dkt. No. 1-1 ("SCC") ¶¶ 1-2.

      The SCC names as defendants Harvey Weinstein, his brother Robert Weinstein ("Robert

Weinstein" or "Defendant"), The Walt Disney Company, Disney Entertainment Enterprises, Inc.

("Disney Enterprises"), Miramax Holding Corp., Miramax Film NY LLC f/k/a Miramax Film

Corp., and Doe Corporations 1-10 (collectively, "Defendants").[1] Specifically, Sokola brings

claims of battery against Harvey Weinstein and negligence against Miramax, Disney, Weinstein,

---

[1] The Walt Disney Company and Disney Entertainment Enterprises, Inc. are collectively referred
to as "Disney." SCC ¶¶ 15-17. Miramax Holding Corp. and Miramax Film NY LLC f/k/a
Miramax Film Corp. are collectively referred to as "Miramax." *Id.* ¶¶ 13-14. Doe Corporations
1-10 are unknown successor and related entities of Miramax and Disney that employed Harvey
Weinstein during the relevant time period and are collectively referred to as the "Doe Corps."
*Id.* ¶ 18.

and the Doe Corps.  Robert Weinstein removed the case to federal court under 28 U.S.C.

§ 1452(a) on the theory that Plaintiff's claim is related to bankruptcy proceedings involving The

Weinstein Company Holdings, LLC ("TWC").  Dkt. No. 1.  Plaintiff filed a motion to remand

the case back to state court.  Dkt. No. 12.

The issue before the Court is not whether Plaintiff's complaint is timely or whether she

has stated a cause of action in battery or negligence under New York law.  The issue, rather, is

where this case will be litigated.  For the reasons set forth below, Plaintiff's motion to remand is

granted.

## BACKGROUND

### I.    The Defendants

The State Court Action concerns conduct in 2002 when Harvey and Robert Weinstein

(the "Weinsteins") were co-chairmen of Miramax, a subsidiary of Disney, and Harvey Weinstein

reported to Disney executives.[2]  SCC ¶¶ 1, 11-12.  The Weinsteins founded Miramax in the late

1970's, which was purchased by Disney in 1993.  *Id.* ¶¶ 22, 24.  They continued to serve as

officers and directors of Miramax after it was purchased.  Dkt. No. 19 ("Harris Declaration" or

"Harris Decl.") ¶ 8.

---

[2] The Court's account of the facts is drawn from the filings made in connection with removal of this case, from the parties' submissions on the instant remand motion, and from counsel's representations at oral argument.  The Court provides these facts merely as background and context.  *See, e.g.*, *Intelligen Power Sys., LLC v. dVentus Techs. LLC*, 73 F. Supp. 3d 378, 379 n.1 (S.D.N.Y. 2014).  Where "subject matter jurisdiction is contested, courts are permitted to look to materials outside the pleadings," including "documents appended to a notice of removal or a motion to remand that convey information essential to the court's jurisdictional analysis." *Romano v. Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010).  At the same time, the "inquiry on the motion to remand is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue."  *Cuomo v. Crane Co.*, 771 F.3d 113, 116 (2d Cir. 2014).

Miramax, The Walt Disney Company, and Harvey Weinstein entered into two employment agreements that together spanned the time period from 1993-1999. SCC ¶¶ 15, 89. Miramax and Disney Enterprises also entered into a 1999 employment agreement with Harvey Weinstein, and agreed to be jointly and severally liable with Miramax from 1999 until the expiration of the employment agreement in or about 2005. *Id.* ¶¶ 17, 89.

In 2005, the Weinsteins founded TWC and left Miramax. Harris Decl. ¶ 8. They served as co-chairmen and co-Chief Executive Officers of TWC. *Id.*

## II.   The State Court Action

The SCC describes a brutal sexual assault committed by Harvey Weinstein against Plaintiff in or about September 2002. SCC ¶¶ 14, 30.

The SCC describes that Plaintiff met Harvey Weinstein at an event in Manhattan associated with her modeling agency. After conversing with him about her interest in becoming an actress, Plaintiff accepted an invitation to have lunch to discuss her future. *Id.* ¶ 31. The "lunch" occurred approximately three days later. *Id.* ¶ 34. Instead of taking Plaintiff to a restaurant, Harvey Weinstein had his driver drop the two of them at Harvey Weinstein's Soho apartment. *Id.* ¶ 37. Once there, Harvey Weinstein "wasted no time in aggressively and threateningly demanding sex." *Id.* ¶ 39. After telling her that she would have to be comfortable doing whatever a director told her to do if she wanted to be an actress, he instructed her to undress. *Id.* He instructed Plaintiff to touch her vagina (and he touched her vagina himself) even though she said she did not want to do so. *Id.* ¶ 41. Harvey Weinstein then took off his pants and held Plaintiff and touched her breasts while taking her hand and making her touch and massage his penis until he ejaculated. *Id.* ¶¶ 43, 45. Plaintiff continuously protested as Harvey Weinstein caused her to touch him. *Id.* ¶ 44.

The SCC alleges that approximately one week after the incident at his apartment, Harvey Weinstein called Plaintiff to ask how she was doing. *Id.* ¶ 49. It also alleges that he "thereafter persisted in his pursuits against" Plaintiff and that Plaintiff "experienced fear and anxiety whenever she communicated with him." *Id.* ¶ 50.

At the time, Robert Weinstein was co-chairman of Miramax. Plaintiff alleges that he not only knew about his brother's predatory behavior but also that he enabled it. *Id.* ¶¶ 4, 53. Plaintiff asserts a number of facts to support that in or before 2002, Robert Weinstein was aware of allegations of sexual harassment and rape against his brother. *See, e.g.*, *id.* ¶¶ 54, 56-64, 66. Plaintiff further alleges that "numerous employees and executives of Miramax and Disney were aware of Harvey Weinstein's pattern of misconduct, but the companies that employed him utterly failed to supervise him, and they continued to empower him with their prestige and resources and allowed him to find more victims, including [Plaintiff]." *Id.* ¶ 5; *see also id.* ¶ 67. She names at least six officers or employees each of whom were employed by Miramax or Disney during a period that preceded or included 2002 and who either knew of Harvey Weinstein's pattern of sexual harassment and assault and discussed it with others or should have known. *Id.* ¶¶ 67-87, 91, 96.

The SCC alleges that Harvey Weinstein committed the tort of battery by engaging in conduct that would constitute violations of New York Penal Law §§ 130.52, 130.55, and 130.65 (collectively, the "Child Sex Crimes"). *Id.* ¶¶ 98, 99-102. It also alleges that Robert Weinstein, Miramax, and Disney were negligent, including the negligent retention and/or supervision of Harvey Weinstein and affirmative acts covering up his commission of prior sexual assaults, and that this negligence resulted in Harvey Weinstein's commission of the Child Sex Crimes against Plaintiff. *Id.* ¶¶ 103-12.

The SCC does not assert claims against TWC or any of the directors of the TWC.  Nor does it allege any conduct by either Weinstein that postdates 2005.

## III.    The *Geiss* Action

The State Court Action is not the first case that Plaintiff brought alleging sexual abuse by Harvey Weinstein.  Plaintiff was one of ten women who filed a putative class action lawsuit against Harvey Weinstein and others on December 6, 2017.[3]  *Id.* ¶ 21; *see Geiss v. The Weinstein Company Holdings, LLC*, No. 17-cv-9554 (S.D.N.Y.) (the "*Geiss* Action").  The *Geiss* Action alleges claims by the ten women individually and on behalf of three separate classes: (1) a nationwide class of women (the "Nationwide Class"); (2) state law claims on behalf of a subclass of women "who met with Harvey Weinstein in person, before September 30, 2005, (i) to audition for or to discuss involvement in a project to be produced or distributed by Miramax or (ii) in a meeting or event facilitated, hosted, or underwritten by Miramax" (the "Miramax Subclass"); and (3) state law claims on behalf of a subclass of women "who met with Harvey Weinstein in person (i) to audition for or to discuss involvement in a project to be produced or distributed by [TWC] or its affiliates, or (ii) in a meeting or event facilitated, hosted, or underwritten by [TWC] or its affiliates" (the "TWC Subclass").  *Geiss* Action, Dkt. No. 140 ("*Geiss* Amended Complaint" or "*Geiss* AC") at ¶¶ 729-732.

The *Geiss* Action asserts claims for violations of the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. §§ 1591, 1595; negligent supervision and retention; the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c)-(d); civil battery; assault; false imprisonment; intentional infliction of emotional distress; negligent infliction of emotional distress; and ratification.  *Id.* ¶¶ 738-921.  It names as defendants Harvey Weinstein,

---

[3] Plaintiff was not named in the initial complaint filed on December 6, 2017 in the *Geiss* Action but was named as "Jane Doe" in the amended complaint later filed on October 31, 2018.

Robert Weinstein, TWC, Disney, several companies under the Miramax brand, Buena Vista International, Inc., certain directors and/or officers of TWC, and certain Miramax officers. *Id.* ¶¶ 33-58.

Plaintiff was identified in the complaint as Jane Doe. SCC ¶ 21. Because the misconduct in the *Geiss* Action spanned Harvey Weinstein's time at both Miramax and TWC, Plaintiff brought claims as a member of the Nationwide Class, the Miramax Subclass, and the TWC Subclass. *Geiss* AC ¶¶ 729-31. She asserted all of the claims listed in the *Geiss* Amended Complaint, except for those under the TVPA. The *Geiss* Amended Complaint alleges as to Plaintiff the following:

> Jane Doe is a resident and citizen of Poland. She met Weinstein when she was 16 years old at an event with her modeling agency in New York City. He then lured her to his apartment and sexually assaulted her, and he continued to emotionally abuse and sexually harass her for nearly a decade thereafter. As a result, Jane Doe has experienced severe emotional and physical distress. Jane Doe was injured in her property or livelihood as a result of Weinstein's actions, because Weinstein told Jane Doe he would help her secure an ensemble role in a movie, but he never did despite years of acting as the gatekeeper for and barrier to the industry because she would not give in to his sexual demands.

*Id.* ¶ 32. The detailed factual allegations as to Plaintiff are contained in Paragraphs 203-242 of the *Geiss* Amended Complaint. Those paragraphs begin by discussing the 2002 sexual assault in much the same language as described in the SCC. However, they then proceed to describe incidents of harassment and abuse that continued until 2011 when Plaintiff was no longer a minor. *Id.* ¶¶ 215-238. These include incidents from 2004-2005 and after 2008. *Id.* ¶¶ 217-19, 229-32.

On April 17, 2019, the Honorable Alvin K. Hellerstein dismissed the TVPA claims by the TWC Subclass except as to Harvey Weinstein, dismissed all of the RICO claims for lack of standing, dismissed the ratification claims as "an invalid alternative theory of liability," and dismissed the remaining state claims of all of the named plaintiffs on statute of limitations

grounds except for Plaintiff. *Geiss v. The Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 167-175, 172 n.9 (S.D.N.Y. 2019). As to Plaintiff, Judge Hellerstein noted that, effective February 14, 2019, the New York legislature had passed the Child Victims Act ("CVA") which revived for a limited period "every civil claim or cause of action brought against any party alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense [as defined under New York penal law] committed against a child less than eighteen years of age." *Id.* at 176 (quoting N.Y. C.P.L.R. § 214-g). The CVA requires revived claims to be brought not earlier than six months after and not later than one year and six months after the effective date of the law. *See* N.Y. C.P.L.R. § 214-g. Accordingly, because Plaintiff alleged that "Weinstein sexually assaulted her in 2002, when she was sixteen years old," and because "[t]hat conduct, as alleged, would constitute a sexual offense" under the requisite provision of the New York penal law, the court dismissed Plaintiff's claims based on the 2002 assault "without prejudice to asserting claims when they become timely under section 214-g." *Geiss*, 383 F. Supp. 3d at 176.

On July 1, 2019, Judge Hellerstein denied Harvey Weinstein's motion for a stay and a certificate of appealability. *Geiss* Action, Dkt. No. 293. Since that date, the Court has adjourned status conferences at the request of the parties and on their representations that they were working on a settlement agreement and coordinating with bankruptcy counsel for TWC. *E.g.*, *id.* Dkt. Nos. 327, 330.

## IV.    Other Litigation Against Certain Defendants

In addition to the State Court Action and the *Geiss* Action, a number of other lawsuits have been filed against certain of the Defendants, including in this District:

- *David v. The Weinstein Company, LLC*, 18-cv-5414 (RA), brought against Harvey and Robert Weinstein, TWC, The Weinstein Company LLC ("TWC LLC"), and a number of individuals who were TWC directors.

- *Canosa v. Ziff*, 18-cv-4115 (PAE), brought against Harvey and Robert Weinstein, TWC, TWC LLC, and a number of individuals who were TWC directors.

- *Noble v. Weinstein*, 17-cv-9260 (AJN), brought against Harvey and Robert Weinstein, TWC, and TWC LLC.

- *Dulany v. Miramax Film NY, LLC*, 18-cv-4857 (AKH) brought against Harvey and Robert Weinstein, TWC, TWC LLC, various TWC directors, Miramax Film NY, LLC, unidentified Miramax directors and/or officers, The Walt Disney Company, and Disney Enterprises.  This action was voluntarily dismissed without prejudice on October 5, 2018.

## V.    TWC Bankruptcy

In the wake of reports about Harvey Weinstein's sexual misconduct that began to emerge in the fall of 2017, on March 19, 2018, TWC and its affiliated debtors (collectively, the "TWC Debtors") filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Cases").  Harris Decl. ¶ 3.  Miramax and Disney are not debtors in the Chapter 11 proceedings. Nor are any of the Doe Corps. whom Plaintiff sued in the State Court Action.  *See* Dkt. No. 13 ("Pl. Br.") at 9; Dkt. No. 18 ("Def. Br.") at 4 n.2.  The Bankruptcy Cases remain pending.  Harris Decl. ¶ 3; *see In re The Weinstein Company Holdings LLC*, No. 18-10601 (Bankr. D. Del.).

On February 11, 2019, Robert Weinstein filed proofs of claim in the Bankruptcy Cases against TWC and its affiliate, TWC LLC, for indemnification arising out of his employment agreement with TWC, dated June 30, 2005 (the "TWC Employment Agreement"), and the Third Amended and Restated Liability Company Agreement of TWC, dated October 21, 2005 (the "TWC LLC Agreement"), as well as for his allocable share of the proceed of any insurance policies held by TWC.  *See* Harris Decl. ¶ 5.  He asserted these indemnification and insurance claims to seek legal fees and/or judgments incurred or that might be incurred by him in

defending certain actions arising out of Robert Weinstein's alleged or actual conduct as it related to Harvey Weinstein's sexual misconduct.  *Id.* ¶ 6.  Specifically, the proofs of claim noted that "Claimant [Robert Weinstein] has or may be named a defendant in existing, potential, or threatened litigation related to sexual harassment, assault, and battery allegedly committed by Harvey Weinstein as co-chairman of TWC[]" and then listed the *Geiss*, *David*, *Canosa*, and *Noble* actions, as well as an action by the New York State Attorney General, and actions pending in New York State Supreme Court, the United States District Court for the Central District of California, and the Central London Employment Tribunal.  *Id.*, Ex. A ¶ 7, Ex B. ¶ 13.  The proofs of claim note that "[t]he claims asserted against Claimant in each of the Proceedings relate to Claimant's service as a member and officer of TWC[] and the Allegations arise out of or are in connection with TWC[]'s business or affairs" and that accordingly, Robert Weinstein had claims for indemnification under the TWC Employment Agreement and the TWC LLC Agreement.  *Id.*, Ex. A ¶ 7, Ex B. ¶ 13.

Robert Weinstein has also submitted claims for coverage in connection with this and other actions to insurers who issued policies to TWC Debtors, as well as to insurers for Disney who issued policies covering insurable events both before and after TWC was founded in 2005.  *Id.* ¶¶ 8, 10.

Other former directors of TWC and TWC LLC, including Harvey Weinstein, filed similar proofs of claim also asserting such rights.  *Id.* ¶ 7.  For example, Harvey Weinstein's proof of claim notes that he "has been named or may be named as a defendant in existing, potential, or threatened litigation . . . related to conduct and events occurring during his employment as Chief Executive Officer of the [TWC] including, among other things, allegations of personal and

bodily injury" and that those allegations give rise to claims under his TWC LLC Agreement and TWC Employment Agreement.  Harris Decl., Ex. C ¶ 9.

## VI.    The Global Settlement

On or about November 2019, certain persons who were parties to or interested persons in both the litigation against Harvey Weinstein or the Bankruptcy Cases signed a confidential term sheet (the "Term Sheet") for the settlement and resolution of those matters (the "Global Settlement").[4]  Since the signing of the Term Sheet, the status conference in the *Geiss* Action has been adjourned several times in order to permit the parties to finalize the settlement agreement and motion for preliminary approval of the settlement while coordinating with bankruptcy counsel.  *E.g.*, *Geiss* Action, Dkt. Nos. 315, 327, 330.

The Term Sheet is non-binding, does not create any legally binding or enforceable obligations, is subject to the drafting of definitive documentation, and, among other things, will be subject to the approval of both the Bankruptcy Court and the *Geiss* Court if definitive documentation is drafted and agreed.  Harris Decl. ¶¶ 13-15.  Still, it reflects the substantial effort of approximately 50 different parties over a substantial period of time.  *Id.* ¶ 13.

The signatories to the Term Sheet include, among others, class counsel and all of the named plaintiffs in the *Geiss* Action except for Sokola, the New York Attorney General, the TWC Debtors, a committee representing the interests of trade creditors of the TWC Debtors and alleged victims, Harvey and Robert Weinstein, and TWC and/or Miramax officers and/or

---

[4] The Term Sheet itself was filed under seal and with a motion to seal in recognition of the fact that it was not yet finalized.  *See* Dkt. Nos. 20, 21.  Accordingly, the Court describes only those portions of the Term Sheet that were disclosed by the parties or that are necessary to understand their arguments or this decision.  That said, the preliminary nature of the Term Sheet—and the fact that even as of today it has not yet been approved—undercuts any argument for bankruptcy court "related to" jurisdiction, as argued by Sokola's counsel.  *See* Oral Arg. Tr. at 7:19-25. The Court will address the motion to seal by separate order.

directors.  *Id.* ¶ 14.  It also includes insurers for TWC and Disney and provides that the cash

portion of the settlement will be funded by proceeds of the insurance policies issued to TWC and

Disney and its affiliates.  *Id.* ¶ 16.  In return, those insurers will receive general releases under

the Global Settlement for claims brought by alleged victims of Harvey Weinstein and coverage

claims by defendants named in the actions arising out of Harvey Weinstein's alleged misconduct.

*Id.*  Aside from Harvey and Robert Weinstein, none of the Defendants named in the SCC is a

signatory to the Term Sheet.

   The Term Sheet purports to settle any and all claims, including unasserted claims, arising

from Harvey Weinstein's misconduct prior to the earlier of preliminary approval of the class

settlement or the effective date of the Chapter 11 plan, including all claims against any of the

companies (with limited exceptions) that Harvey Weinstein was employed by, worked for, or

held a position as an officer or director of between January 1, 1979 and October 1, 2017—

including Disney—and any and all individuals employed by or affiliated with those entities

against whom claims have or could have been made (the "Individual Tort Claims").  *See* Term

Sheet ¶ 1(e) n.7.[5]  The settled claims include claims in pending litigation and all claims of the

TWC Debtors, TWC non-debtor affiliates, plaintiffs, and the holders of Individual Tort Claims to

the proceeds of any insurance policies provided by the Insurers.  *Id.* ¶ 1(d).  The Term Sheet is

also intended to satisfy the claims of the creditors in the Bankruptcy Cases sufficient to permit

confirmation of a Chapter 11 plan.  *Id.*

   Among the provisions of the Term Sheet is one requiring the order by the Bankruptcy

Court approving the bankruptcy plan to contain a channeling injunction (the "Channeling

_____

[5] The companies where Harvey Weinstein was employed between January 1979 and October
2017, other than TWC, include The Walt Disney Company and Disney Enterprises, Inc.  *See*
Term Sheet ¶ 1(e) n.7.

Injunction").  *Id.* ¶ 5.  The Channeling Injunction would "forever" channel into the settlement amount (and thus protect the parties to the settlement against any claims over and above that settlement amount) a large variety of claims arising from sexual misconduct of Harvey Weinstein after 2005 (*i.e.* after the formation of TWC) and related insurance claims and claims for indemnification and contribution against a broadly defined group of "Protected Parties," including both the TWC Debtors and parties not related to the TWC Debtors such as Disney. *Id.* ¶ 1(e) n.8.  The Term Sheet also provides for the dismissal of pending litigation relating to the cases and claims subject to the Global Settlement, *id.* ¶ 14(f), and that the holders of claims will release all claims, including claims against the insurers who are signatories to the Term Sheet, *id.* ¶¶ 14(b)-(c).

In exchange for the releases and the Channeling Injunction, the insurers who are signatories to the Term Sheet will agree to pay a specified settlement amount, on behalf of the defendants and the certain non-TWC released entities and persons, to be distributed in the *Geiss* Action (including to class counsel), to certain individual plaintiffs, to the estate for distribution to unsecured creditors, and to pay certain defense costs.  *Id.* ¶ 6.  Aside from granting a release, Robert and Harvey Weinstein contribute no consideration as part of the Term Sheet.  The non-TWC released entities and persons are not parties to the Term Sheet and contribute no consideration but they do receive the benefit of the Term Sheet.

## PROCEDURAL HISTORY

Plaintiff filed this action in New York State Supreme Court on December 19, 2019.  On February 3, 2020, Robert Weinstein timely filed a notice of removal pursuant to 28 U.S.C. §§ 1331, 1334(b), 1446, and 1452(a) and Rule 9027 of the Federal Rules of Bankruptcy Procedure.

Plaintiff submitted a motion to remand on March 4, 2020.  On April 1, 2020, Robert Weinstein submitted his opposition brief and also a motion to seal an exhibit containing the Term Sheet.  Plaintiff submitted her reply brief on April 22, 2020.

The Court held oral argument on June 8, 2020.  At the oral argument, the Court asked Defendant to submit a redacted version of the Term Sheet with an explanation as to which portions should remain redacted.  Oral Arg. Tr. at 3:24-4:3.  Defendant did not submit a redacted version, but instead stated generally which provisions were public knowledge or had been referenced in the briefing.  *See* Dkt. No. 24.

## LEGAL STANDARD

A motion to remand for lack of subject matter jurisdiction may be brought at any time the action is pending in federal court, pursuant to 28 U.S.C. § 1447(c).  The party seeking to remove an action from state court to federal court bears the burden of proving federal jurisdiction.  *See California Pub. Emps. Ret. Syst. v. WorldCom. Inc.*, 368 F.3d 86, 100 (2d Cir. 2004); *accord United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994).  As a general matter, "there is a presumption against removal, and uncertainties tend to weigh in favor of remand."  *Harraz v. EgyptAir Airlines Co.*, 2019 WL 6700946, at *2 (S.D.N.Y. Dec. 9, 2019).  "[O]ut of respect for the limited jurisdiction of the federal courts and the rights of states, we must resolve any doubts against removability."  *In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007) (citation and internal quotation marks omitted).

Section 1452(a) of Title 28 provides that "[a] party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title."  "[R]emoval jurisdiction . . . is 'determined by reference to the well-pleaded complaint.'"

*D'Alessio v. New York Stock Exchange Inc.*, 258 F.3d 93, 100 (2d Cir. 2001) (quoting *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986)).

Section 1334(b) provides, with limited exceptions not relevant here, that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. § 1334(b).  Therefore, "the bankruptcy jurisdiction of federal courts is divided into three categories: 'those that arise under Title 11; that that arise in a Title 11 case; and those that are related to a case under title 11.'" *Worldview Entm't Holdings Inc. v. Woodrow*, 611 B.R. 10, 15-16 (S.D.N.Y. 2019) (quoting *Stern v. Marshall*, 564 U.S. 462, 473 (2011)).

"An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate."  *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6 (1995).  The Second Circuit has stated that "a civil proceeding is related to a title 11 case if the action's outcome might have any conceivable effect on the bankrupt estate."  *SPV Osus, Ltd. v. UBS AG*, 882 F.3d 333, 339-40 (2d Cir. 2018) (citation omitted).  "A claim need not be certain to provide a federal court with jurisdiction: contingent outcomes can satisfy the 'conceivable effects' test, so long as there is the *possibility* of an effect on the estate."  *Id.* at 340 (quoting *N.Y. Commercial Bank v. Pullo*, 2013 WL 494050, at *3 (Bankr. S.D.N.Y. Feb. 7, 2013)).

As Judge Koeltl has noted, "[C]ourts within the Second Circuit have found that 'related to' jurisdiction exists in several circumstances":

> First, "related to" jurisdiction has been found in cases in which the cause of action will directly impact the amount of any distribution payable to creditors, as for example when the bankruptcy trustee or representative sues to recover damages on behalf of the bankruptcy estate.  Second, "related to" jurisdiction has been found in

cases in which the court "enjoin[s] third-party non-debtor claims that directly affect the res of the bankruptcy estate," which can cover cases where the court enjoins a creditor from suiting a third party in order to keep in place the debtor's reorganization plan.  Third, jurisdiction has been found in cases in which there is a "reasonable legal basis" for a claim by a third-party defendant against the debtor for indemnification or contribution.

*Worldview Entmt Holdings*, 611 B.R. at 16 (internal citations omitted).

## DISCUSSION

Plaintiff's motion raises two related issues: whether the Court has (and, if so, should exercise) "related to" jurisdiction and if not, whether Plaintiff should be awarded attorneys' fees and costs for moving to remand.[6]  For the reasons that follow, the Court holds that it does not have "related to" jurisdiction and grants the motion to remand, but denies the request for attorneys' fees and costs.

## I.     Defendant's Assertion of "Related To" Jurisdiction

Robert Weinstein asserts two bases for "related to" jurisdiction.  First, he argues that Plaintiff's allegations include conduct that took place when he and Harvey Weinstein were officers and directors of TWC and thus, as a result, TWC has potential liability with respect to his claims for indemnification and advancement that would affect the property of the estate; relatedly, he asserts that TWC's policies with its insurance carriers are property of the estate that might be impaired by litigation of the SCC.  Def. Br. at 10, 13.  Second, he argues that, even if the SCC does not allege conduct extending to his time at TWC and thus neither TWC's indemnification obligations nor its insurance policies are implicated by the SCC, as Defendants, the pre-TWC entities Disney and its former subsidiary, Miramax, have an interest in the State Court Action, and their insurers thus have a contingent interest in the outcome of that litigation.

---

[6] Plaintiff does not argue that this action arises under or in the bankruptcy proceeding.  *See* Dkt. No. 1 ¶ 24.

Because the insurers for Disney and Miramax allegedly play a critical role in the Global Settlement and because those insurers might not participate in the Global Settlement (or might not participate in that settlement at the levels currently contemplated) if there is an adverse judgment in the State Court Action, Robert Weinstein argues that the State Court Action can impact the handling and administration of the bankruptcy estate. *Id.* at 14-15. The Court takes each set of arguments in turn.

A.    **The Claims for Indemnification and Advancement Do Not Support "Related To" Jurisdiction**

There is no doubt that potential claims by a third party for indemnification against a debtor entity, such as TWC, can support the assertion of "related to" jurisdiction over the action in which the indemnification obligation could arise. *See SPV Osus*, 882 F.3d at 340; *Canosa v. Ziff*, 2018 WL 3642631, at *4 (S.D.N.Y. Aug. 1, 2018). Under such circumstances, the removed action could have a "conceivable effect" on "the debtor's rights, liabilities, options or freedom of action" and could "impact[] upon the handling and administration of the bankrupt estate." *Celotex*, 514 U.S. at 308 n.6 (citation omitted).

It is irrelevant that the claim for indemnification is not liquidated, *i.e.*, that it is contingent upon the indemnitee being held liable in the state court action. If the litigation concluded and judgment was entered against the indemnitee, the effect on the bankruptcy proceeding would "be certain and quantifiable." *In re Worldcom, Inc. Sec. Litig.*, 283 B.R. 308, 322 (S.D.N.Y. 2003). "An indemnification right arises at the time the indemnification agreement is executed, and it constitutes a claim under the Bankruptcy Code even if the act giving rise to the indemnification right has not yet occurred." *In re Residential Capital, LLC*, 488 B.R. 565, 573-74 (Bankr. S.D.N.Y. 2013) (citation omitted); *see id.* at 574 ("The outcome of the action has a 'conceivable effect' on the ResCap Chapter 11 Proceeding because the ResCap Entities may be obligated to

16

indemnify the Defendants if they are found liable in the case."); *Allstate Ins. Co. v. Credit Suisse Secs. (USA) LLC*, 2011 WL 4965150, at *4 (S.D.N.Y. 2011) ("An outcome's contingency does not preclude it from having a 'conceivable effect' on a bankruptcy proceeding").

Moreover, the right to indemnification need not be undisputed and the indemnitor therefore cannot defeat removal jurisdiction by denying coverage.  It is enough that "there is a 'reasonable' legal basis for the claim."  *SPV Osus*, 882 F.3d at 340 (quoting *In re WorldCom*, 293 B.R. at 319); *see Canosa*, 2018 WL 3642631, at *4 (same).  The removing party must articulate a legal basis for the indemnification claim and it must be reasonable.  "[T]he mere assertion of an indemnity claim against a debtor, no matter how baseless, cannot trigger bankruptcy jurisdiction."  *In re Chateaugay Corp*, 213 B.R. 633, 640 (S.D.N.Y. 1997).

Robert Weinstein's argument fails, however, because there is no reasonable legal basis for an indemnification claim here.  The TWC Employment Agreement limits the claims for which Robert Weinstein is indemnified to those which arise out of his role with TWC or its affiliated entities.  Under that agreement, Robert Weinstein is:

> fully indemnified and held harmless by . . . [TWC] to the fullest extent permitted by law from any claim, liability, loss, cost or expense of any nature (including attorney's fees of counsel selected by [Mr. Weinstein], judgments, fines, any amounts paid or to be paid in any settlement, and all costs of any nature) incurred by [Mr. Weinstein] . . . , which arises, directly or indirectly, in whole or in part out of any alleged or actual conduct, action or inaction on [Mr. Weinstein's] part in or in connection with or related in any manner to [Mr. Weinstein's] status as an employee, agent, officer, corporate director, member, manager, shareholder, partner of, or [Mr. Weinstein's] provision of services to, [TWC] or any of its affiliated entities[.]

Pl. Br. at 11; *see also* Harris Decl., Ex. A ¶ 6.  Likewise, Robert Weinstein is only indemnified under the TWC LLC Agreement for losses and claims "arising out of or in connection with the [TWC's] business or affairs."  Pl. Br. at 11-12; *see also* Harris Decl., Ex. A ¶¶ 4, 6.

17

Plaintiff, however, does not have any claim, nor is she asserting one, that is related to Robert Weinstein's role as a TWC officer, director, employee, or agent, and Robert Weinstein risks no liability from his conduct as a TWC officer, director, employee, or agent because of Plaintiff's lawsuit.  It is undisputed that she was 16 years old in 2002 when she was assaulted by Harvey Weinstein.  She came of majority before TWC was even formed.  She already has litigated in the *Geiss* Action whether she has a right to sue TWC or any TWC officer, director, or employee for the assault and harassment she suffered.  As with the other plaintiffs in that action, Judge Hellerstein dismissed with prejudice Plaintiff's RICO claim for lack of standing and dismissed her state law claims as time-barred but without prejudice only to those state law claims that could become timely under the CVA, *i.e.*, that related to misconduct when she was a minor.  *Geiss*, 383 F. Supp. 3d at 171-72.  That ruling is now *res judicata* and Plaintiff cannot relitigate it.  *See, e.g.*, *Michaelesco v. Estate of Richard*, 355 F. App'x 572, 573 (2d Cir. 2009) (observing that "[t]he longstanding rule in this Circuit . . . is that a dismissal for failure to comply with the statute of limitations will operate as an adjudication on the merits") (quoting *PRC Harris, Inc. v. Boeing Co.*, 700 F.2d 894, 896 (2d Cir. 1983)); *Mitchell v. Goldman Sachs Grp., Inc.*, 2018 WL 9848166, at *3 (S.D.N.Y. Sept. 21, 2018) (stating same); *see also Goldberg Cohen, LLP v. Luv N' Care*, Ltd., 2018 WL 4538927, at *3 (S.D.N.Y. Sept. 20, 2018) ("[U]nder New York law, a dismissal on statute of limitations grounds is considered to be on the merits, precluding relitigation of that issue in a subsequent action.") (citation omitted).

The only claim Plaintiff has indicated is viable as it relates to Weinstein's sexual misconduct is the claim based on the assault committed against her when she was "less than eighteen years of age," *i.e.*, well before TWC was incorporated.  It is only that claim that is timely under N.Y. C.P.L.R. § 214-g, and indeed, that is the only claim that she brings in her State

Court Action.  She has not sued either Robert and Harvey Weinstein in their capacities as TWC officers and directors, she has not named TWC or any TWC directors or officers, and she has not alleged any conduct that dates into the years after TWC was incorporated.  Indeed, although the SCC alleges that after the alleged assault, Harvey Weinstein "persisted in his pursuits against Plaintiff" and subjected her to "ongoing emotional abuse," SCC ¶¶ 50-51, it is clear from context that such conduct refers to the continued harassment and abuse of Sokola while she was a minor, which is the cause of action on which Sokola sues and the only cause of action that is still timely. Plaintiff's counsel confirmed as such during oral argument.  *See* Oral Arg. Tr. at 6:2-6, 6:15-17.

Thus, Plaintiff's case is meaningfully different from that of Alexandra Canosa ("Canosa"), which was considered by Judge Engelmayer.  Canosa alleged that she was a victim of Harvey Weinstein's sexual assaults and abuse between August 2010 and June 2015, when he was affiliated with TWC and TWC LLC.  *Canosa*, 2018 WL 3642631, at *1.  She also alleged that TWC directors, whom she named as defendants, "solicited, requested, commanded, importuned, or intentionally aided" Weinstein in committing his sexual assaults.  *Id.*  One of the defendants, Tim Sarnoff, removed the action from state court and Judge Engelmayer denied the motion to remand.  But, in that context, "all parties recognize[d]" that each director was a beneficiary of an indemnification and advancement agreement with TWC, and thus it was undisputed that the director defendants could remove the claims against them under Section 1452(a).  *Id.* at *4.  Not only did the "agreements directly implicate the debtors' estate," but also "the claims brought by defendant directors . . . against the bankruptcy estate pursuant to the Indemnification Agreement may be monetarily substantial."  *Id.* at *4-5.  Indeed, Canosa did not dispute that Harvey and Robert Weinstein were being sued in their capacity as TWC officers, directors, or employees, but rather she argued that they would not ultimately be entitled to

indemnification under their agreements because their conduct was in bad faith. As Judge Engelmayer held, "That argument assumes the conclusion of the litigation," and, in any event, ignored the substantial claims for advancement that the estate would have to satisfy prior to such conclusion. *Id.* at *5.[7]

Plaintiff's case also is meaningfully different from *Deangelis v. Corzine*, 501 B.R. 155 (S.D.N.Y. 2012), upon which Robert Weinstein also relies. *See* Def. Br. at 12. There, plaintiff filed a derivative action against MF Global's directors, alleging that they violated their fiduciary duties and committed other torts in connection with the management of an employee stock plan. The director defendants removed to federal court, arguing that the action was related to MF Global's bankruptcy proceeding because they had indemnification claims against MF Global for "liability and loss suffered and expenses (including attorneys' fees) reasonably incurred" in "any action, suit or proceeding" brought against them "by reason of the fact that" they were directors. *Deangelis*, 501 B.R. at 157. The plaintiff moved to remand on the argument that he did not sue the defendants as directors, but rather as fiduciaries of the employee stock plan, and thus the indemnification provision of the company's bylaws was not implicated. *Id.* at 159. The court had little trouble rejecting that sophistry. It was "inherent" in the removed complaint that the defendants were being sued for conduct committed by reason of the fact that they were board members, because "Defendants were only fiduciaries of the [employee stock plans] . . . because they were members of the Board." *Id.* Here, it is not "inherent" that Sokola is suing based on

---

[7] The only other "Weinstein" case cited by Defendant Robert Weinstein, *David v. The Weinstein Company*, 2019 WL 1864073 (S.D.N.Y. April 24, 2019), does not support his argument for the same reason. The plaintiff alleged that Harvey Weinstein sexually assaulted her in 2015 and forcibly raped her in 2016, when he was the co-chairman and co-Chief Executive Officer of TWC. In addition to suing Harvey and Robert Weinstein, she also named as defendants certain TWC directors on the theory that they negligently contributed to the assaults. *Id.* at *1. In that circumstance, there was no dispute that the case was properly removable.

conduct after TWC was formed.  To the contrary, the only thing "inherent" to her complaint is that it cannot be based on conduct after she was of majority, after TWC was incorporated.

Robert Weinstein responds that Plaintiff previously participated in the *Geiss* Action and in that action she brought claims relating to Harvey Weinstein's sexual misconduct through 2011, after she had reached the age of majority, including an incident where he attempted to make a forced entry into her hotel room and a separate incident where he exposed himself while making a lewd sexual comment.  But those claims were dismissed with prejudice as time-barred and are no longer open to her.  Put another way, neither the fact that Plaintiff was a victim of Harvey Weinstein when she was an adult and he worked at TWC and was the beneficiary of TWC's indemnification policies, nor the fact that Plaintiff previously chose to sue on that conduct, deprives her of the right—once that lawsuit was dismissed—to sue on conduct when she was a minor and to draft a complaint that neither names TWC nor implicates TWC's indemnification policies.  Indeed, defense counsel admitted that it would have no basis for removal under this theory if Plaintiff had filed a complaint based only on pre-TWC allegations. *See* Oral Arg. Tr. at 14:24-153 ("I think I would have to agree . . . that if they filed a complaint that was limited solely to an assault in 2002, and that was the . . . temporal end of the allegations, I don't see where there would be a claim for indemnification by my client or by Harvey Weinstein against TWC.").

At argument and in his brief, Robert Weinstein argued that even if the SCC does not assert claims against him for conduct while he was a TWC officer or director, there is a risk that Plaintiff will take discovery with respect to his TWC conduct and, if so, he will be entitled to indemnification with respect to that discovery from TWC, giving him a right to property of the estate.  *See* Def. Br. at 13; Oral Arg. Tr. at 17:8-15, 18:15-18, 27:6-10.  He thus relies on the

indemnification language of the TWC Employment Agreement that obligates TWC to indemnify him for any "loss, cost or expense of any nature" arising out of his status as a TWC officer or director.  Harris Decl., Ex. A ¶ 6, Ex. B ¶ 12.  But the chances that Robert Weinstein will incur any cost or expense in the State Court Action that would entitle him to indemnification from TWC are not only remote, but purely speculative.

Robert Weinstein states in conclusory fashion that "[a]t a minimum, Mr. Weinstein will incur attorneys' fees in this action defending against allegations of action or inaction during his tenure as a TWC employee, officer, and director."  Def. Br. at 13.  But the SCC contains no allegations against Robert Weinstein—or any of the Defendants—in connection with the TWC time period, and Robert Weinstein has provided no evidence to this Court that indicates that the possibility he will be called upon to give testimony or provide documents in this action with respect to that time period is anything but speculative.  Indeed, at argument, Plaintiff's counsel represented that "there is no basis to say that anything—the conduct of either Weinstein[] while they were working at the Weinstein company has anything to do with the liability in the present case."  Oral Arg. Tr. at 31:19-22; *see id* at 31:10-18 (noting "I can't say that no one would serve a document subpoena, for example, to the Weinstein company if . . . there was a statement made about Sokola that could shed light on what happened in 2002, I suppose such a subpoena could be served by someone" but "[l]iability for negligence can't be oddly based on things that happened after the events . . . that . . . caused the harm that is the basis for the complaint").  A claim for indemnification that is only theoretically possible and otherwise remote or speculative is not sufficient to create "related to" jurisdiction.  *See Gen. Elec. Capital Corp. v. Por-Fac Coop., Inc.*, 2002 WL 1300054, at *2 (S.D.N.Y. June 11, 2002) ("[P]otential ramifications are insufficient to render the claims that have been asserted against the non-debtor Defendants

'related to' Debtor's bankruptcy proceeding."); *see also Allstate Ins.*, 2011 WL 4965150, at \*4 ("[T]he potential applicability of indemnification provisions is not by itself the equivalent of an effect on an indemnifier's bankruptcy proceedings.").

Indeed, the chances that Robert Weinstein will incur expenses in this case resulting from his status at TWC is remote.  The Court does not rely on Plaintiff's counsel's representation. The Court independently is hard-pressed to understand how such discovery of conduct after 2005 could even be relevant to Plaintiff's assertion of her claim against Robert Weinstein.  Plaintiff's cause of action against Robert Weinstein is for negligence.  It asserts that, based on the knowledge Robert Weinstein had in 2002, he was negligent in failing to protect her from the 2002 assault.[8]  SCC ¶¶ 104, 106-12.  It does not allege that conduct of Harvey Weinstein after 2002 or knowledge or conduct of Robert Weinstein after 2002 (and after 2005) could somehow make him, or the other Defendants, negligent for his actions or failure to act in 2002.  It is commonplace that liability for negligence as to an injury is based on the knowledge and conduct of the defendant at the time of that injury and cannot be based on later acquired knowledge.  *See, e.g.*, *Cambria v. Costco Wholesale Corp.*, 2019 WL 6878216, at \*5 (S.D.N.Y. Dec. 17, 2019) (negligence requires that injury is substantially caused by defendant's prior breach of duty to plaintiff); *Bouche v. City of Mount Vernon*, 2012 WL 987592, at \*6 (S.D.N.Y. Mar. 23, 2012) (negligent supervision requires employer "knew or should have known of the employee's propensity for the conduct which caused the injury" prior to the injury's occurrence).

---

[8] In addition, the very case Robert Weinstein cites undercuts his position, as does Plaintiff's counsel's representation.  *See* Def. Br. at 13 n.7.  *Heffernan v. Pacific Dunlop GNB Corp.*, 965 F.2d 369 (7th Cir. 1992) holds that, to determine whether a director has been sued by reason of the fact that he was a director, it is necessary to review the allegations of the underlying complaint.  *Id.* at 373.  Here, there is not a single allegation related to Robert Weinstein's conduct as a TWC director, officer, or employee after TWC's formation in 2005.

Finally, Robert Weinstein relies on his status as a beneficiary of TWC's director and officer ("D&O") insurance through TWC's various agreements with its insurers. He argues that "related to" jurisdiction exists because he has claims for coverage against TWC's insurers, and the TWC insurance policies are property of the estate. *See* Def. Br. at 13. As Judge Engelmayer has noted, there is a division among the courts as to whether proceeds of a D&O policy constitute property of the estate. *See Canosa*, 2018 WL 3642631, at *5. The Court need not delve into that controversy in this case. The mere tendering of a lawsuit to the insurer of a debtor for coverage cannot manufacture federal jurisdiction. Even if the TWC insurance policies are property of the estate, the outcome of this action, whether in federal or state court, can have no conceivable effect on that property. That is because Plaintiff's claims arise from a sexual assault limited to the time period while she was a minor and before Robert Weinstein was employed by TWC and before any of the TWC policies became effective.

Indeed, three of the insurance companies have already rejected Robert Weinstein's requests. The American Insurance Company ("AIC") and Fireman's Fund Insurance Company ("FFIC") wrote:

> The Litigation arises out of alleged intentional sexual misconduct by Harvey Weinstein in 2002. However, the Policies first incepted on April 7, 2006. Therefore, as the Litigation does not allege any misconduct during the Policy Periods, AIC has no duty to defend and/or indemnify Robert Weinstein in the Litigation under the Primary Policies.

Dkt. No. 14 ("Wigdor Decl."), Ex. B at 7.[9] Chubb offered the following, among many other grounds, for declination:

> The Sokola Lawsuit alleges an assault that took place in 2002, which was prior to the time any of the Named Insureds on the Policies, including the first Named Insured The Weinstein Company Holdings LLC, was in existence. Moreover, the allegations of the Sokola Lawsuit are that the conduct of Robert Weinstein that is

---

[9] FFIC came to the same conclusion with respect to its coverage under certain excess/umbrella policies. *Id.* at 17.

in issue took place while he was an officer, director or manager of Miramax.  In fact, the Sokola Lawsuit does not even mention The Weinstein Company or any Named Insured under the Policies at all.  Therefore, the acts that the Sokola Lawsuit alleges Robert Weinstein committed were not undertaken "with respect to the conduct of" the Named Insureds' business.

*Id.*, Ex. C at 8.  Westchester Fire Insurance Company wrote:

The allegations of the Sokola Lawsuit are that the conduct of Robert Weinstein that is in issue took place while he was an officer, director or manager of Miramax.  In fact, the Sokola Lawsuit does not even mention The Weinstein Company Holdings at all.  Therefore, the acts that the Sokola Lawsuit alleges Robert Weinstein committed were not undertaken in his capacity as an executive of The Weinstein Company Holdings.  Accordingly, Westchester must respectfully deny coverage for the Sokola Lawsuit[.]

*Id.*, Ex. D at 5-6.

The burden is on the proponent of federal jurisdiction to assert facts that would support it. *Linardos v. Fortuna*, 157 F.3d 945, 947 (2d Cir. 1998).  Robert Weinstein has not given the Court any reason to believe that the remaining two TWC insurers would come to a contrary conclusion.  *See* Def. Br. at 13; Harris Decl. ¶ 11.

## B.    The Global Settlement Does Not Support "Related To" Jurisdiction

Robert Weinstein also asserts "related to" jurisdiction based on his coverage claims against insurers for Disney and Miramax and the role that those insurance policies play in the Global Settlement.  *See* Def. Br. at 14.  He contends that the State Court Action is "related to" the Bankruptcy Cases because he has viable coverage claims against insurers for pre-TWC entities, *i.e.*, Disney and its former subsidiary, Miramax, those insurers have made a decision to contribute to the Global Settlement contemplated by the Term Sheet, and the "Global Settlement is part of and conditioned on the overall chapter 11 plan for the TWC Debtors."  *Id.* at 14-15.  He argues that the pendency and outcome of the State Court Action—because Disney's insurers may face claims with respect to it based on pre-TWC conduct—might impact the willingness of those

same insurers to participate in the Global Settlement that resolves, with respect to the TWC bankruptcy, claims against TWC or that impact the property of TWC.  *See id.* at 15.

Robert Weinstein's argument reflects a fundamental misunderstanding of "related to" jurisdiction.  The outcome of Sokola's lawsuit itself will not have any "conceivable effect" on TWC's "rights, liabilities, options, or freedom of action or the administration of the plan," and that does not change because Disney is a named Defendant in this action, that, if found liable, will cause its insurers to have a duty of indemnification.  *Celotex*, 514 U.S. at 308 n.6.  Disney is not itself a debtor in the Bankruptcy Cases, nor does it have any obligations to the estate. Disney's insurers have received a notice of claim from a person (Robert Weinstein) who also has made a claim against the estate for conduct that occurred when Robert Weinstein was a TWC officer and director, but Disney's insurance policies (particularly policies impacted by conduct prior to when Robert Weinstein was a TWC officer and director) themselves are not property of the estate as defense counsel admits, nor does the estate owe any obligation to Disney's insurers nor is it owed an obligation.  *See* Oral Arg. Tr. at 19:8-9.  Whether Plaintiff prevails in her claims against Disney in this action will itself have no impact on TWC's debtor's rights, liabilities, options, or freedom of action or the administration of the plan, which will remain the same before and after the outcome of this action.

Robert Weinstein theorizes that this case, and the money needed to defend it, "may well" result in Disney's insurers no longer participating in the Global Settlement at the level anticipated by the Term Sheet and result in the Global Settlement falling apart.  Def. Br. at 15. But if that is so—and it is speculative whether it is so—the impact on the estate will be a function not of the outcome of Sokola's lawsuit but of the Term Sheet itself and the independent

decisions of third parties, Disney's insurers, on how to make payments that would benefit the estate that it had no obligation to make in the first place.[10]

This argument thus admits of no limiting principle. Taken to its logical conclusion, it would permit any non-debtor defendant in a state court action brought by a non-debtor to remove its dispute into federal court on the pretense that the non-debtor defendant also owes money to a bankruptcy estate. A non-debtor party facing such a state court claim could expand federal jurisdiction and deny a plaintiff her choice of forum by the mere expedient of reaching an agreement with the debtor to contribute to the estate *if it is not held liable on the unrelated claim in state court*. The argument would be identical to that presented here: the state court action, if resolved adversely to the defendant, would impact the administration of the bankruptcy estate.

Indeed, as the facts of this case show, Robert Weinstein's argument would permit any state court defendant who might have a claim to or from a bankruptcy estate to assert bankruptcy jurisdiction and rob the state court of its jurisdiction and a plaintiff of her choice of forum. Imagine, for example, a company that faces a significant but hotly disputed state tort action in what it perceives to be an unfavorable forum. Neither the company nor the plaintiff has filed a petition in bankruptcy. Neither is holding property of an estate in bankruptcy. There is no diversity between the parties. The case does not arise under the United States Constitution, the laws of the United States, or treaties of the United States, and the United States is not a party. Could such a company remove the state court action to federal court and deprive both the

---

[10] Further, the Term Sheet is just that—a preliminary term sheet that is subject to final approval. It is thus difficult to see how Sokola's action realistically could upset the Global Settlement. If the Term Sheet is finalized and the Global Settlement is approved, then, by its terms, the insurers will be bound by it. No activity in this action could upset that legal result. On the other hand, if the Global Settlement is not approved, then, by definition, there will be no settlement with which Sokola's action could interfere.

plaintiff of her choice of forum and the state court of its right to decide state issues on the pretense that another company that has filed a bankruptcy petition *may* bring a lawsuit against it—perhaps on the disputed claim that there is some small sum of money owed between the companies—and that a loss in the state action could impair its cash flow and create the risk that it might not be able to satisfy the unasserted unliquidated claim by that debtor company?  Robert Weinstein does not contend that bankruptcy jurisdiction extends that far, to sweep up two unrelated parties in an unrelated dispute that has the mere potential to diminish a contribution that one side might ultimately be forced to make to a bankruptcy estate.  But that is the upshot of his argument.  Bankruptcy jurisdiction was intended to require a relationship to the estate far less attenuated than that.  *See Allstate Ins.*, 2011 WL 4965150, at *6 (no "related to" jurisdiction where "the underlying action is too far removed from the bankruptcy proceedings to be related to them").

The courts confronted a similar argument in *In re Johns-Manville Corp.*, 517 F.3d 52 (2d Cir. 2008).  There, debtor Johns-Manville Corporation ("Manville") had filed for Chapter 11 bankruptcy after experiencing a number of products liability lawsuits.  It also entered into settlement agreements with its insurance companies to avoid the uncertainty of insurance litigation and to fund its reorganization plan.  *Id.* at 56.  One of these insurers was Travelers Indemnity Company and related entities ("Travelers"), which paid monies into the bankruptcy estate in exchange for a full and final release of Manville-related claims.  The settlement was predicated upon the bankruptcy court issuing an injunction that barred suits against Travelers, which it did in acknowledgement that the "insurance policies were the bankruptcy estate's most valuable asset."  *Id.* at 56-57.  Notwithstanding the injunction, plaintiffs filed lawsuits directly against Travelers, and the issue became whether the injunction could extend to claims against

Travelers based on independent but factually related misconduct.  The bankruptcy court, ruling that the injunction was intended "to provide the broadest protection possible to facilitate global finality for Travelers as a necessary condition for it to make a significant contribution to the Manville estate," held that the injunction would reach such independent claims against Travelers. *Id.* at 57.

The Second Circuit reversed and held that the injunction as to state law claims based on Travelers' own misconduct and which were unrelated to Manville's insurance policy proceeds and the *res* of the Manville estate exceeded the court's "related to" bankruptcy jurisdiction. *Id.* at 68.  The Second Circuit pointed to another case in which it held that the court had "related to" jurisdiction over "suits against a significant asset of the bankruptcy estate—Manville's insurance policies." *Id.* at 62.  But, the Second Circuit reasoned, the claims over which the bankruptcy court asserted jurisdiction in that case "differ[ed] significantly":

> Travelers candidly admits that both the statutory and common law claims seek damages from Travelers that are *unrelated* to the policy proceeds, quite unlike the claims [in the other cases] where plaintiffs sought indemnification or compensation for tortious wrongs of Manville to be paid out of the proceeds of Manville's insurance policies. . . . Moreover, the claims at issue here do not seek to collect on the basis of Manville's conduct.  Instead, the Plaintiffs seek to recover directly from Travelers, a non-debtor insurer, for its own alleged misconduct.  Plaintiffs neither seek to recover insurance proceeds or rely on the insurance policies [which were the property of the estate] for recovery.

*Id.* at 63 (internal citations omitted).  It further stated:

> The district court emphasized the bankruptcy court's declaration that its "repeated use of the term[s] 'arising out of' and 'related to' [was] not gratuitous or superfluous; they were meant to provide . . . global finality for Travelers. . . ." But global finality is only as "global'" as the bankruptcy court's jurisdiction.  A court's ability to provide finality to a third-party is defined by its jurisdiction, not its good intentions.

*Id.* at 66.[11]  The Second Circuit concluded: "It was inappropriate for the bankruptcy court to enjoin claims brought against a third-party non-debtor solely on the basis of that third-party's financial contribution to a debtor's estate.  If that were possible 'a debtor could create subject matter jurisdiction over any non-debtor third party by structuring a plan in such a way that it depended upon third-party contributions.'"  *Id.* (quoting *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 228 (3d Cir. 2004)); *see also In re Greektown Holdings, LLC*, 728 F.3d 567, 578 (6th Cir. 2013) (holding that "a nexus between the other proceeding and [a] settlement agreement" is insufficient to support "related to" jurisdiction because it would "allow[] the settling defendant to supply the bankruptcy court with subject matter jurisdiction to enjoin other claims simply by deciding to condition its agreement to the settlement upon the entry of an order barring those claims" and thus would result in "subject matter by consent").

It follows that this Court does not have "related to" jurisdiction over Plaintiff's State Court Action.  Plaintiff does not seek access to policy proceeds that are the property of the estate. Her claims against Robert Weinstein, if successful, will not be paid out of proceeds of TWC's insurance policies.  Nor do the claims seek to recover on the basis of TWC's misconduct.  And, though perhaps needless to say, the claims against the other Defendants will also not be paid out of property of the estate.  Rather, Plaintiff seeks to recover directly from Harvey and Robert Weinstein, Disney, and Miramax, all non-debtors, for their alleged misconduct (and perhaps derivatively from Disney and Miramax's insurers, also non-debtors).  She seeks neither "to

---

[11] The Court also favorably quoted the Fifth Circuit to the effect that "[s]hared facts between the third-party action and a debtor-creditor conflict do not in and of themselves suffice to make the third-party action 'related to' the bankruptcy. . . . [T]he district court's desire to 'foster and encourage and then preserve settlement in federal court' does not in and of itself confer jurisdiction."  *Id.* at 65 (quoting *Matter of Zale Corp.*, 62 F.3d 746, 753-54 (5th Cir. 1995)).

recover insurance proceeds [that are property of the estate]" nor does she "rely on the insurance policies [which were the property of the estate] for recovery." *Johns-Manville,* 517 F.3d at 63.

"[S]ubject matter jurisdiction cannot be conferred by consent of the parties. Where a court lacks subject matter jurisdiction over a dispute, the parties cannot create it by agreement even in a plan of reorganization.'" *Id.* at 66 (quoting *In re Combustion Eng'g, Inc.*, 391 F.3d at 228). If it was inappropriate in *Johns-Manville* for the court to find "related to" jurisdiction for "claims brought against a third-party non-debtor solely on the basis of that third-party's financial contribution to a debtor's estate," it follows necessarily that it would be improper for this Court to exercise jurisdiction not based upon the third-party's financial contribution to the debtor's estate but based upon the financial contribution to the estate of the insurer for the non-debtor third party. *Id.*

As in *Johns-Manville*, interpreting "related to" jurisdiction "otherwise risks federal bankruptcy courts 'displac[ing] state courts for large categories of disputes in which some[one] . . . may be bankrupt.'" *Id.* at 67 (quoting *Matter of Zale Corp.*, 62 F.3d 746, 755 (5th Cir. 1995)). Defendant's "jurisdictional theory would authorize a bankruptcy court to exercise jurisdiction over all manner of disputes between parties in a multi-party lawsuit, including those having nothing to do with the debtor, if the centralization of disputes in a single forum would be more likely to lead to a settlement." *In re Dreier LLP*, 2012 WL 4867376, at *4 (Bankr. S.D.N.Y. Oct. 12, 2012) (rejecting "the argument that 'related to' jurisdiction exists based on the speculation that the Trustee or PHH will be more willing to settle their claims if the Court hears the cross-claims"). "It comes as no surprise that [Defendant] cites no supporting authority for its jurisdictional theory." *Id.*

## II.     Abstention and Equitable Remand

Even if the Court had "related to" jurisdiction, it would abstain from hearing Plaintiff's claims.

Although 28 U.S.C. § 1334 "grants district courts jurisdiction over . . . bankruptcy proceedings, it also permits courts to abstain in the interests of justice or comity." *Joseph & Kirschenbaum LLP v. Tenenbaum*, 2020 WL 242374, at *3 (S.D.N.Y. Jan. 16, 2020); *see* 28 U.S.C. § 1334(c)(1) ("[N]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."). District courts may also "remand such claim or cause of action on any equitable ground" pursuant to 28 U.S.C. § 1452(b). *KeyBank Nat'l Ass'n v. Franklin Advisers, Inc.*, 600 B.R. 214, 226 (S.D.N.Y. 2019); *see In re Cathedral of the Incarnation in the Diocese of Long Islan*d, 99 F.3d 66, 69 (2d Cir.1996) (Section "1452(b)'s reference to an 'equitable ground' means one that is fair and reasonable, rather than one that originated in the chancery courts or is discretionary").

"Courts in this district have treated the analysis under these two statutory provisions as essentially identical." *Kerusa Co. LLC v. W10Z/515 Real Estate Ltd. P'ship*, 2004 WL 1048239, at *3 (S.D.N.Y. May 7, 2004) (Lynch, J.). A list of non-exclusive factors bears on this analysis:

> (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity with state courts; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of a right to trial by jury; (7) prejudice to the involuntarily removed parties; and (8) the potential for duplicative and uneconomical use of judicial resources and the lessened possibility of inconsistent results.

*Id.*

The balance of these factors favors remand in this action. As to the first, fifth, and eighth factors, Defendant argues that removal would allow for the efficient coordination of discovery

given that the other cases arising out of Harvey Weinstein's misconduct are pending in the same District.  *See* Def. Br. at 21.  But those cases involve alleged conduct by Harvey Weinstein and Robert Weinstein *after* 2005, after TWC was formed.  Those defendants include TWC Debtors and TWC officers and directors.  The instant case involves conduct that substantially pre-dates 2005 and does not involve conduct that goes into the TWC time period.  Aside from Robert Weinstein and Harvey Weinstein, there are no overlapping defendants.  The Court has been proffered no evidence that litigation in the cases removed to federal court for post-2005 conduct will verge into the pre-2005 time period; the possibility that it does is, to any substantial extent, remote.  The Court sees no benefit in terms of the efficient administration of the bankruptcy estate in burdening the federal courts with the details of misconduct that occurred before the relevant time period in those cases, with defendants in this action who are not parties to those actions, and with the knowledge of these various defendants as to Harvey Weinstein's conduct occurring at a much later time.  In short, there can be no benefit to the "efficient administration" of the estate where discovery is unlikely to implicate "common incidents, issues, witnesses, and records" or involve "substantially overlapping issues against substantially identical defendants." *Canosa*, 2018 WL 3642631, at *6.

The second, third, and fourth factors also weigh in favor of remand.  "While remand is not required solely because an action involves application of state law," Plaintiff's complaint concerns only state law claims and those that were recently authorized by the New York legislature through the CVA.  *Kerusa*, 2004 WL 1048239, at *5.  The state courts have the greatest interest in resolving issues of state law.  That makes analysis of these factors different from the analyses in *Canosa* or *David* to which Defendant cites.  *See* Def. Br. at 23.  Principles of comity and the local significance of the litigation under the CVA to the New York state courts

weigh substantially in favor of returning the matter to those courts.  *See Kerusa*, 2004 WL

1048239, at *5 ("[T]he fundamental fact here is that the issues in this litigation exclusively

concern state law, and do not implicate any question of bankruptcy law or other matters of

uniquely federal interest or expertise."); *see also Buechner v. Avery*, 2005 WL 3789110, at *5

(S.D.N.Y. Feb. 14, 2005) ("Only state law claims are asserted, all purportedly arising under New

York law. This factor weighs in favor of remand.").  Finally, as to the seventh factor, removal

would "deny plaintiff[] the[] choice of the state courts as [her] forum" and thus would prejudice

her.  *Kerusa*, 2004 WL 1048239, at *7.[12]

## III.    Request for Attorneys' Fees

Section 1447(c) provides: "An order remanding the case may require payment of just

costs and actual expenses, including attorneys fees, incurred as a result of the removal."  28

U.S.C. § 1447(c).  Invoking this provision, Plaintiff seeks an award of attorneys' fees and costs.

The application is denied.

In *Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005), the Supreme Court discussed

the standards that district courts should apply in determining how to exercise their discretion

whether to award costs and expenses.  Section 1447(c) does not create an automatic right to fees

and costs for a prevailing party or even a presumption that such fees and costs should be awarded

when a motion to remand is granted.  *See id.* at 137.  "[T]he removal statute grants defendants a

right to a federal forum. A remand is necessary if a defendant improperly asserts this right, but

incorrectly invoking a federal right is not comparable to violating substantive law."  *Id.*  At the

same time, a court is not limited to awarding fees and costs only when the removal is "frivolous,

unreasonable, or without foundation."  *Id.* at 138-39.  Instead, the Supreme Court has instructed,

---

[12] The sixth factor does not support abstention or equitable remand because a jury trial would be available in federal court just as in state court.

courts should be guided by the "large objectives" of the removal statute. *Id.* at 139-40, 141

(quoting *Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 759 (1989)). "The appropriate

test for awarding fees under 1447(c) should recognize the desire to deter removals sought for

purposes of prolonging litigation and imposing costs on the opposing party." *Id.* at 140.

Moreover, "[a]bsent unusual circumstances, courts may award attorney's fees under 1447(c)

only where the removing party lacked an objectively reasonable basis for seeking removal." *Id.*

at 141.

Applying those standards, the Court exercises its discretion not to award attorneys' fees

and costs here. There is no evidence that removal was "sought for the purpose of prolonging

litigation and imposing costs on the opposing party." *Id.* at 140. Defendant had an

understandable, though mistaken, desire to centralize litigation in order to facilitate a resolution

of the Global Settlement and the Bankruptcy Cases. Thus, the removal of the action was not

"merely an attempt to abuse or harass plaintiff, or to force plaintiff to incur unnecessar[y]

expenses." *Koninklijke Phillips Elecs. v. Digital Works, Inc.*, 358 F. Supp. 2d 328, 335

(S.D.N.Y. 2005) (quoting *Mastec Latin America v. Inepar S/A Industrias E Construcoes*, 2004

WL 1574732, at *4 (S.D.N.Y. July 13, 2004)). Moreover, "[a]lthough the [defendant's]

arguments for removal are ultimately unsuccessful," the Court cannot say that they were

frivolous and lacked color. *Qatar v. First Abu Dhabi Bank PJSC*, 2020 WL 206661, at *13

(S.D.N.Y. Jan. 14, 2020). They were grounded in an attempt to extend existing authority—albeit

far beyond where that authority could or would go. Finally, there has been no evidence

presented that removal has unfairly impeded Plaintiff's ability to litigate her claim in state court

and to obtain a timely resolution.

## CONCLUSION

For the reasons stated herein, the motion to remand is GRANTED, but the request for attorneys' fees and costs is DENIED.

The Clerk of Court is respectfully directed to close Dkt. No. 12.

SO ORDERED.

Dated: July 2, 2020
    New York, New York

                                   LEWIS J. LIMAN
                          United States District Judge